# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

HUBERT RABEL,

                Plaintiff,

v.                                  CIVIL ACTION NO.   2:14-cv-25818

HUNTINGTON NATIONAL BANK,[1]

                Defendant.

### MEMORANDUM OPINION AND ORDER

Pending before the Court are Plaintiff's Motion to Remand and for Fees and Costs (the "Motion to Remand"), (ECF 5), Plaintiff's Motion to Withdraw Plaintiff's Stipulation if Remand is Not Granted and Request for a Hearing (the "Motion to Withdraw Stipulation"),[2] (ECF 28), Plaintiff's Motion Requesting Hearing on Plaintiff's Motion to Remand Case to Circuit Court of Kanawha County and for Fees and Costs (the "Request for Hearing on Motion to Remand"), (ECF 19), and Defendant's Motion to Dismiss Plaintiff's Complaint (the "Motion to Dismiss"), (ECF 10). For the reasons discussed herein, the Court **DENIES** the Motion to Remand and the Motion to Withdraw Stipulation, **DENIES AS MOOT** the Request for Hearing on Motion to Remand, and **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss.

---

[1]  Defendant notes that "Plaintiff improperly names Defendant as 'Huntington National Bank'" and "[t]he proper party name is 'The Huntington National Bank.'" (ECF 10 at 1 n.1.)

[2]  Plaintiff entitled the Motion to Withdraw Stipulation as the "Motion to Withdrawal [sic] Plaintiff's Stipulation if Remand is Not Granted and Request for Hearing." (ECF 28 at 1.)

## I. *Background*

This case arises out of Defendant's efforts to collect a debt from Plaintiff. Plaintiff "is a resident of West Virginia." (ECF 1-1 ¶ 1.) Defendant "is a corporation having its principal offices in a state other than West Virginia" that "engag[es] directly or indirectly in debt collection . . . within the State of West Virginia . . . ." (*Id.* ¶¶ 3–4.)

The Complaint alleges that "[a]fter . . . Plaintiff became in arrears upon [an] alleged indebtedness to . . . Defendant, . . . Defendant began to engage in collection of such indebtedness." (*Id.* ¶ 5.) As part of its debt-collection efforts, Defendant allegedly "use[d] telephone calls placed to Plaintiff," "written communications," and "did otherwise communicate with Plaintiff." (*Id.*)

The Complaint avers that "Plaintiff retained . . . counsel to represent Plaintiff's interest in connection with consumer indebtedness on which Plaintiff had become in arrears." (*Id.* ¶ 6.) The Complaint further alleges that, after Plaintiff retained counsel, "the Defendant caused a telephone collection call to be placed to Plaintiff's home," and, during this call, "Plaintiff told . . . Defendant's employee that Plaintiff was represented by an attorney and gave Defendant's employee . . . Plaintiff's attorney's name and telephone number." (*Id.* ¶ 7.) The Complaint alleges that, following this conversation, "Defendant continued to cause telephone calls to be placed to . . . Plaintiff." (*Id.* ¶ 8.)

The Complaint does not provide further allegations regarding these communications. (*See* ECF 1-1.) Instead, it alleges that "Defendant maintains records of each call placed to . . . Plaintiff by date, time called, duration of call, the identity of . . . Defendant's employee and notes or codes placed upon such record by . . . Defendant's employee." (*Id.* ¶ 9.) The Complaint also alleges that

"[s]uch records will reflect that . . . Defendant placed telephone calls to . . . Plaintiff's residential telephone number after it appeared that Plaintiff was represented by an attorney." (*Id.* ¶ 10.)

On August 12, 2014, Plaintiff filed the Complaint in the Circuit Court of Kanawha County, West Virginia. (ECF 1-1.) The Complaint includes four counts: (1) violations of Sections 46A-2-125, 46A-2-125(d), 46-2-128(e), and 46A-2-127(a) and (c) of the West Virginia Consumer Credit and Protection Act (the "WVCCPA"), (*id.* ¶¶ 11–13); (2) common-law negligence, (*id.* ¶¶ 14–16); (3) intentional infliction of emotional distress ("IIED"), (*id.* ¶¶ 17–20); and (4) common-law invasion of privacy, (*id.* ¶¶ 21–25). The Complaint requests a broad array of relief, including the following: (1) "[a]ctual damages for the violations of the WVCCPA as authorized by *West Virginia Code* §46A-5-101(1);" (2) "[s]tatutory damages in the maximum amount authorized by *West Virginia Code* §46A-5-101(1);" (3) "Plaintiff's cost of litigation;" (4) "general damages for . . . Defendant's negligence as alleged in Count II;" (5) "general . . . and punitive damages for Defendant's conduct alleged in Count III and IV;" and (6) that "Plaintiff's debts be cancelled pursuant to *West Virginia Code* §46A-5-105." (*Id.* at 8–9.)

Following the requests for relief, the Complaint provides the following statements: "Plaintiff has attached a stipulation pertaining to damages. Plaintiff has capped damages at $75,000 or less, including costs and attorney's fees." (*Id.* at 9 (emphasis omitted).) Attached to the Complaint is a notarized stipulation, which was filed contemporaneously with the Complaint and is signed by Plaintiff, Plaintiff's counsel, and a "Susan E. Rabel" (the "Stipulation"). (*Id.* at 10.) The Stipulation states as follows:

> Plaintiff(s) and Attorneys for Plaintiff(s) agree to be bound by the following stipulation: so long as this case remains in West Virginia Circuit Court or an Article III Court, the Plaintiff shall neither seek nor accept an amount greater than $75,000.00 in this case, including any award of attorney's fees, but excluding

3

interest and costs. This stipulation has no application, force, or enforceability in an arbitration forum or other alternative dispute resolution environment except non-binding mediation as part of a court proceeding.

(*Id.*)

On September 16, 2014, Defendant removed the case to this Court. (*See* ECF 1.) In the Notice of Removal, Defendant asserts that the sole basis for this Court's subject-matter jurisdiction over this case is diversity jurisdiction pursuant to 28 U.S.C. § 1332. (*Id.* at 1.)

On September 29, 2014, Plaintiff filed the Motion to Remand, in which Plaintiff asserts that this Court lacks subject-matter jurisdiction over this matter because the amount in controversy is below the $75,000 requirement for diversity jurisdiction. (ECF 5.) Defendant filed its opposition to the Motion to Remand on October 16, 2014, (ECF 7), and Plaintiff filed his reply brief on October 21, 2014, (ECF 8).

On November 20, 2014, Defendant filed the Motion Dismiss. Plaintiff filed his opposition to the Motion to Dismiss the next day, (ECF 12 & 13), and Defendant filed its reply brief on November 26, 2014, (ECF 14).

On January 12, 2015, Plaintiff subsequently filed the Request for Hearing on Motion to Remand. (ECF 19.) To date, Defendant has not filed a responsive briefing to this motion.

Finally, Plaintiff filed the Motion to Withdraw Stipulation on March 27, 2015. (ECF 28.) Defendant filed its opposition to this motion on April 13, 2015, (ECF 34), and Plaintiff filed his reply brief the same day, (ECF 35).

As such, these four motions are fully briefed and ready for disposition.

## II. *Motion to Remand*

The sole dispute between the parties as to the Motion to Remand is whether the Court has

4

diversity jurisdiction over this matter. (*See* ECF 6 at 3–4; ECF 7 at 2.) Defendant argues—and Plaintiff does not contest—that there is complete diversity between the parties. (*See* ECF 1 ¶¶ 12–14; ECF 6 at 3–4.) Rather, the parties dispute whether (1) the amount in controversy exceeds $75,000; and (2) the Stipulation limits Plaintiff's potential recovery at or below the $75,000 threshold for diversity jurisdiction. (ECF 6 at 3–4; ECF 7 at 2–6; ECF 8 at 1–2.) For the reasons discussed below, the Court finds that the amount in controversy exceeds $75,000 and the Stipulation does not limit Plaintiff's potential recovery below the jurisdictional amount-in-controversy requirement. As such, the Court finds that it has diversity jurisdiction over this matter.

## A.    Legal Standard

Article III of the United States Constitution provides, in pertinent part, that "[t]he judicial Power shall extend . . . to Controversies . . . between Citizens of different States." U.S. Const., Art. III, §2. "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1).

Congress provided a right to remove a case from state to federal court under 28 U.S.C. § 1441. This statute states, in relevant part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a). Because removal of civil cases from state to federal court infringes state sovereignty, courts strictly construe the removal statute and resolve all doubts in favor of

remanding cases to state court. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941) ("Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the [removal] statute has defined." (internal quotation marks and citations omitted)); *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148, 151 (4th Cir. 1994) ("Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction." (citation omitted)); *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir. 1993) (noting "Congress' clear intention to restrict removal and to resolve all doubts about the propriety of removal in favor of retained state court jurisdiction" (citation omitted)).

The party asserting federal jurisdiction bears the burden of proof. *Landmark Corp. v. Apogee Coal Co.*, 945 F. Supp. 932, 935 (S.D. W. Va. 1996). "A defendant that removes a case from state court in which the damages sought are unspecified, asserting the existence of federal diversity jurisdiction, must prove by a preponderance of the evidence that the value of the matter in controversy exceeds the jurisdictional amount." *Id.* (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 567 (9th Cir. 1992)). "This test is framed alternatively as a requirement that a defendant demonstrate that it is more likely than not that the amount in controversy exceeds the jurisdictional amount." *Id.* (citing *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996)). "To satisfy this burden, a defendant must offer more than a bare allegation that the amount in controversy exceeds $75,000." *Judy v. JK Harris & Co.*, Civil Action No. 2:10–cv–01276, 2011 WL 4499316, at *3 (S.D. W. Va. Sept. 27, 2011) (citation omitted). "An allegation without supporting facts will not satisfy the burden of establishing the amount in controversy." *Id.* (citation omitted). "Rather, the defendant seeking removal must supply evidence to support his claim regarding the amount at

issue in the case." *Id.* (citation omitted). "In so doing, he may rely upon the entirety of the facts and circumstances comprising the plaintiff's damages claim." *Id.* (citation omitted).

In evaluating a party's claim to federal jurisdiction, the court must base its decision on the record existing at the time the notice of removal was filed. *St. Paul Mercury Indem. Co. v. Red Cab*, 303 U.S. 283, 291 (1938); *Dennison v. Carolina Payday Loans, Inc.*, 549 F.3d 941, 943 (4th Cir. 2008) ("[F]ederal jurisdiction . . . is fixed at the time the . . . notice of removal is filed." (citing *Mollan v. Torrance*, 22 U.S. (9 Wheat) 537, 539 (1824))). In particular, where the plaintiff's monetary demand is not specified in the complaint, "[t]he value of the matter in controversy . . . is determined by considering the judgment that would be entered if plaintiff prevailed on the merits." *Landmark Corp.*, 945 F. Supp. at 936–37 (citation omitted). In calculating the amount in controversy, the court may consider the entire record and make an independent evaluation of whether the amount in controversy is satisfied. *Grubb v. Jos. A. Bank Clothiers, Inc.*, No. Civ.A. 2:05-0056, 2005 WL 1378721, at *5 (S.D. W. Va. June 2, 2005) (citation omitted); *see Taylor v. Capital One Bank (USA), N.A.*, Civil Action No. 5:09-cv-00576, 2010 WL 424654, at *2 (S.D. W. Va. Feb. 4, 2010) ("In evaluating a party's claim to federal jurisdiction, this Court may consider the entire record that exists at the time the assertion of jurisdiction is made." (citing *Mullins v. Harry's Mobile Homes, Inc.*, 861 F. Supp. 22, 24 (S.D. W. Va. 1994))).

## B.     The Amount in Controversy

Defendant argues that the Court should consider Plaintiff's prayer for equitable relief in the form of the cancellation of his debts pursuant to West Virginia Code § 46A-5-105 when calculating the amount in controversy. (ECF 1 ¶¶ 19–25; ECF 7 at 2–3. *See generally* ECF 1-1 at 9 (requesting that "Plaintiff's debts be cancelled pursuant to West Virginia Code § 46A-5-105").)

7

Defendant further argues that, including this prayer for equitable relief, the amount in controversy exceeds the jurisdictional requirement of $75,000. (ECF 1 ¶¶ 24–25; ECF 7 at 5.)

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977). In the Fourth Circuit, it is also "settled that the test for determining the amount in controversy in a diversity proceeding is 'the pecuniary result to either party which [a] judgment would produce.'" *Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002) (quoting *Gov't Emps. Ins. Co. v. Lally*, 327 F.2d 568, 569 (4th Cir. 1964)). This "pecuniary result" includes the "monetary value" of a contract or agreement when the validity of that agreement is put at issue by a party. *See id.* at 710–11.

In *Woodrum v. Mapother & Mapother P.S.C., Inc.*, Judge Copenhaver addressed whether the amount in controversy includes the value of the type of equitable relief at issue here. *See* Civil Action No. 2:10–00478, 2010 WL 3943732, at *3 (S.D. W. Va. Oct. 5, 2010). In *Woodrum*—as in this case—the complaint sought the cancellation of the plaintiff's debt to the defendant pursuant to the willful-violation provision of West Virginia Code § 46A-5-105. *Id.* The court noted that, if the plaintiff "succeeded in proving the alleged willful violations, he may be entitled to cancellation of the debt, even if that debt was legitimately incurred." *Id.* Accordingly, the court found that the debt "should be considered in valuing the litigation." *Id.*

The Court agrees with Judge Copenhaver's analysis in *Woodrum*. If the Court grants Plaintiff's requested equitable relief, Defendant will face the pecuniary loss of the value of the debt. As such, the Court includes the value of Plaintiff's debt to Defendant when determining the

amount in controversy.[3] *See Dixon*, 290 F.3d at 710 (stating that, in a diversity proceeding, the amount in controversy is determined by the "pecuniary result" to a party). The parties agree that the value of this debt was $71,223.18 at the time of the removal of this action. (ECF 1 ¶ 4 ("As of September 11, 2014, the outstanding balance due on the Loan is $71,223.18."); ECF 8 at 1 ("The amount owed on the house as of September [2014] is $71,223.18.").)

The amount in controversy easily exceeds the $75,000 jurisdictional requirement once the value of Plaintiff's debt to Defendant is included in the potential recovery. In addition to this equitable relief, the Complaint requests actual, general, statutory, and punitive damages. (ECF 1-1 at 5–6.) Numerous combinations of the potential recovery associated with the remaining prayers for relief—along with the $71,223.18 value of the debt—create a total amount in controversy in excess of $75,000.[4]

For example, the Complaint includes a request for actual and statutory damages authorized by West Virginia Code § 46A-5-101(1). (*Id.* at 8.) Section 46A-5-101(1) provides the following, in pertinent part:

> If a creditor has violated the provisions of this chapter applying to . . . any prohibited debt collection practice . . . , the consumer has a cause of action to recover actual damages and in addition a right in an action to recover from the person violating this chapter a penalty in an amount determined by the court not less than one hundred dollars nor more than one thousand dollars.

---

[3] Plaintiff argues that, if the Court considers the value of the debt in the amount-in-controversy analysis, it should also find meritorious Plaintiff's claim that this debt should be cancelled. (*See* ECF 8 at 1–2 (citing W. Va. Code § 46A-5-105).) This argument fails to recognize that the amount-in-controversy calculation is based on the potential recovery "if plaintiff prevailed on the merits." *Landmark Corp.*, 945 F. Supp. at 936–37 (citation omitted). This analysis is distinct from the determination of whether Plaintiff's claims have merit. *See, e.g., id.* As such, the Court declines Plaintiff's invitation to conflate the amount-in-controversy and merits analyses.

[4] Plaintiff argues that, if the Court includes the debt in the amount-in-controversy determination, the jurisdictional threshold is still not satisfied because the debt has a value less than $75,000. (ECF 8 at 2.) This argument is unavailing, as it ignores Plaintiff's numerous other prayers for relief. *See, e.g., Landmark Corp.*, 945 F. Supp. at 936–37 ("The value of the matter in controversy . . . is determined by considering the judgment that would be entered if plaintiff prevailed on the merits." (citation omitted)).

"The court may adjust the damages awarded pursuant to [West Virginia Code § 46A-5-101(1)] to account for inflation from [September 1, 1974] to the time of the award of damages in an amount equal to the consumer price index." W. Va. Code § 46A-5-106. As of 2010, one violation of Section 46A-5-101(1) carried a maximum penalty of $4,414.00. *Woodrum*, 2010 WL 3943732, at *4; (*see also* ECF 1 (Notice of Removal) ¶ 23 (asserting that Plaintiff's request for statutory damages, adjusted for inflation, is valued at "over $4,800 per penalty". *See generally* ECF 1-1 at 8 (requesting "[s]tatutory damages in the maximum amount authorized by" Section 46A-5-101(1)).) The statutory penalty for just one of the alleged Section 46A-5-101(1) violations, (*see* ECF 1-1 ¶ 12 (alleging multiple violations of the WVCCPA)), combined with the $71,223.18 value of Plaintiff's debt to Defendant results in an amount in controversy in excess of the $75,000 requirement. As such, absent a limitation on Plaintiff's potential recovery, the amount in controversy is greater than the jurisdictional requirement.

## C.    The Stipulation

Plaintiff argues that, regardless of whether the amount in controversy exceeds $75,000, the Stipulation limits any potential recovery below the jurisdictional threshold amount. (*See, e.g.*, ECF 6 at 3–4.) The Court disagrees and finds that the Stipulation does not limit Plaintiff's potential recovery below the jurisdictional requirement.

"There is no dispute . . . that . . . a plaintiff may attempt to defeat diversity jurisdiction in this Court by entering into a unilateral binding stipulation limiting its recovery to an amount lower than the jurisdictional requirement provided for by 28 U.S.C. § 1332." *Bailey v. SLM Corp.*, Civil Action No. 5:11–cv–00715, 2012 WL 1598059, at *5 (S.D. W. Va. May 7, 2012). To limit the amount in controversy for jurisdictional purposes, the stipulation must be "a formal, truly binding,

pre-removal stipulation signed by counsel and his client explicitly limiting recovery." *McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 485 (S.D. W. Va. 2001) (citing *Hicks v. Herbert*, 122 F. Supp. 2d 699, 701 (S.D. W. Va. 2000)); *see also Shumate v. DynCorp Int'l LLC*, Civil Action No. 5:11–cv–00980, 2012 WL 830241, at *3 (S.D. W. Va. Mar. 9, 2012) ("[T]he formality requirement is satisfied when a stipulation is signed and notarized." (citation omitted)). Further, "[t]he stipulation should be filed contemporaneously with the complaint, which also should contain the sum-certain prayer for relief." *McCoy*, 147 F. Supp. 2d at 486.

The Stipulation satisfies many of the *McCoy* requirements, including that it was signed by both Plaintiff and his counsel, notarized, and filed contemporaneously with the Complaint. (*See* ECF 1-1 at 10.) However, the Stipulation is deficient insofar as it fails to explicitly limit Plaintiff's potential recovery at or below $75,000. In particular, the Stipulation does not specify whether it encompasses both damages and equitable relief. (*See id. But see id.* at 6 ("Plaintiff has attached a stipulation pertaining to *damages*. Plaintiff has capped *damages* at $75,000 or less, including costs and attorney's fees." (emphasis added)).) Absent an explicit statement that the Stipulation also encompasses equitable relief, the Stipulation only operates to limit Plaintiff's potential damages recovery. *See, e.g.*, *Womack v. Wells Fargo Bank, N.A.*, Civil Action No. 1:11-CV-104, 2011 U.S. Dist. LEXIS, at *9–10 (N.D. W. Va. Aug. 24, 2011) (finding that a stipulation did not encompass declaratory relief where it stated that "all of the[] alleged damages set forth in the complaint are not greater than $75,000" and the plaintiffs would not be entitled to recover "any award of the Court and/or jury" over $75,000); *cf. Bohigian v. Flagstar Bank, FSB*, Civil Action No. 1:11CV181, 2012 WL 112322, at *4 (N.D. W. Va. Jan. 12, 2012) (finding that the plaintiff's stipulation limited the potential recovery where it "specifically include[d] equitable relief in its broad disavowal of

11

damages beyond the jurisdictional threshold"). As such, the Court finds that the Stipulation does not encompass the value of Plaintiff's request for equitable relief.

As noted above, the amount in controversy exceeds the $75,000 jurisdictional requirement once the Court includes Plaintiff's prayer for equitable relief in the potential recovery determination. The Court therefore finds that it has diversity jurisdiction over this matter. *See* 28 U.S.C. § 1332(a). Accordingly, the Court **DENIES** the Motion to Remand, insofar as it requests remand of this case to the Circuit Court of Kanawha County, West Virginia.[5]

## D.      Fees and Costs

Plaintiff also requests fees and costs based on the argument that "removal was objectively unreasonable." (ECF 5; *see* ECF 6 at 4; ECF 8 at 2.) Contrary to Plaintiff's assertion, removal was both reasonable and appropriate in this case. The Court therefore declines to award Plaintiff fees or

---

[5] In the Motion to Withdraw Stipulation, Plaintiff states that the "only purpose . . . Plaintiff had in filing the [Stipulation] was to defeat diversity" by "limiting damages to $75,000." (ECF 28 at 1.) Plaintiff argues that it "would be unjust to . . . require . . . Plaintiff to be limited by the [Stipulation] if the [Stipulation] was found to be lacking" and the Court denied the Motion to Remand. (*Id.* at 2.) Defendant responds that the Motion to Withdraw Stipulation is "an improper effort to avoid the consequences of Plaintiff's own pleadings," the Stipulation "is legally binding with respect to damages," and Defendant "would be unfairly prejudiced if [the Motion to Withdraw Stipulation] was granted." (ECF 34 at 1–2.)

The Court does not need to address the potential prejudice to Defendant because the language of the Stipulation is dispositive as to this motion. The Stipulation provides the following, in pertinent part:

> Plaintiff(s) and Attorneys for Plaintiff(s) agree to be bound by the following stipulation: so long as this case remains in West Virginia Circuit Court *or an Article III Court*, the Plaintiff shall neither seek nor accept an amount greater than $75,000 in this case, including any award of attorney's fees, but excluding interest and costs.

(ECF 1-1 at 10 (emphasis added).) By its own terms, the Stipulation provides that it is legally binding if the case is pending before *either* the West Virginia Circuit Court *or* an Article III Court. (*See id.*) This Court is an Article III court. *E.g.*, *Green v. United States*, Civil Action No. 1:11–CV–176, 2013 WL 2389793, at *11 (N.D. W. Va. May 30, 2013). As such, the plain meaning of the signed and notarized Stipulation provides that it remains legally binding in proceedings before this Court. (*See* ECF 1-1 at 10.) The language of the Stipulation thus precludes Plaintiff's argument that it would be unjust for the Stipulation to remain binding if the Motion to Remand is denied. *Cf. Lincoln Nat'l Life Ins. Co. v. Johnson*, 38 F. Supp. 2d 440, 448–49 (E.D. Va. 1999) (finding that the language of a stipulation and agreement was "clear and unambiguous" and therefore applying the "plain meaning of its terms" (citation omitted)).

Further, at the very least, the Stipulation constitutes *evidence* in the case.

Accordingly, the Court finds that the Stipulation remains legally binding as to damages and **DENIES** the Motion to Withdraw Stipulation.

costs. *See, e.g.*, *Taylor v. Capital One Bank (USA), N.A.*, Civil Action No. 5:09-cv-00576, 2010 WL 424654, at *4 (S.D. W. Va. Feb. 4, 2010) (declining to award sanctions or attorney's fees when removal was appropriate). *See generally Landmark Corp. v. Apogee Coal Co.*, 945 F. Supp. 932, 940 (S.D. W. Va. 1996) ("An award for costs and expenses is solely within the discretion of the court." (citing *Morris v. Bridgestone/Firestone, Inc.*, 985 F.2d 238, 240 (6th Cir. 1993))).

As such, the Court **DENIES** the Motion to Remand, insofar as it requests fees and costs.

### III.  Motion to Dismiss

Defendant moves to dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (ECF 11 at 1.) For the reasons discussed below, the Court grants in part and denies in part the Motion to Dismiss.

### A.     Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Allegations "must be simple, concise, and direct" and "[n]o technical form is required." Fed. R. Civ. P. 8(d)(1).

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a civil complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A C. Wright & A. Miller, *Federal Practice and Procedure* § 1356 (1990)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court decides whether this standard is met by separating

the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Id.* A motion to dismiss will be granted if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244.[6]

## B.   Count I—Violations of the WVCCPA

Count I alleges that Defendant's debt-collection communications violated the following sections of the WVCCPA: (1) § 46A-2-125; (2) § 46A-2-125(d); (3) § 46A-2-128(e); and (4) § 46A-2-127(a) and (c). (ECF 1-1 ¶ 12.) Defendant argues that Count I fails to state valid claims because it provides only "conclusory pleadings" and "indistinct assertions." (ECF 11 at 4.)

"The WVCCPA is a 'comprehensive consumer protection' law that incorporates elements of the Uniform Consumer Credit Code, the National Consumer Act, and older West Virginia statutes." *Countryman v. NCO Fin. Sys., Inc.*, Civil Action No. 5:09–cv–00288, 2009 WL 1506720, at *2 (S.D. W. Va. May 27, 2009). "Among its numerous provisions . . . are restrictions on the manner in which debt collectors may attempt to collect debts." *Id.*; *see also Snuffer v. Great Lakes Educ. Loan Servs., Inc.*, Civil Action No. 5:14–cv–25899, 2015 WL 1275455, at *7 (S.D. W. Va. Mar. 19, 2015) ("[T]he WVCCPA is a detailed statute that describes factual scenarios

---

[6] In his opposition to the Motion to Dismiss, Plaintiff argues that the Court should employ a notice-pleading standard. (ECF 13 at 1–2.) To this end, Plaintiff provides the following quote regarding his proffered standard: "Given the Federal Rules' simplified standard for pleading, a court may dismiss a complaint only if it is clear that no relief can be granted *under any set of facts that could be proved consistent with the allegations*." (ECF 13 at 2 (quoting *Teachers' Retirement System of La v. Hunter*, 477 F.3d 162, 170 (4th Cir. 2007)).) Plaintiff's advocacy on behalf of this language is ill-advised, insofar as Plaintiff "apparently failed to apprehend that in *Twombly* the Supreme Court sought to retire this specific language from the 12(b)(6) standard." *Parkman v. Elam*, Action No. 3:08-CV-690, 2009 WL 736067, at *2 n.4 (E.D. Va. Mar. 17, 2009).

constituting a violation of each provision."). In *State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, the Supreme Court of Appeals of West Virginia indicated that the WVCCPA is to be construed broadly:

> The purpose of the CCPA is to protect consumers from unfair, illegal, and deceptive acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action. As suggested by the court in *State v. Custom Pools*, 150 Vt. 533, 536, 556 A.2d 72, 74 (1988), it must be our primary objective to give meaning and effect to this legislative purpose. Where an act is clearly remedial in nature, we must construe the statute liberally so as to furnish and accomplish all the purposes intended.

461 S.E.2d 516, 523 (W. Va. 1995) (internal quotation marks and citations omitted).

   1.   Section 46A-2-125

The Complaint first alleges that Defendant violated the WVVCPA by "engaging in unreasonable or oppressive or abusive conduct towards the Plaintiff in connection with the attempt to collect a debt by placing telephone calls to the Plaintiff in violation of *West Virginia Code* §46A-2-125." (ECF 1-1 ¶ 12(a).) Section 46A-2-125 "sets out the general principle proscribing oppressive and abusive conduct by debt collectors." *Bourne v. Mapother & Mapother, P.S.C.*, 998 F. Supp. 2d 495, 501 (S.D. W. Va. 2014). This Section provides the following, in relevant part:

> No debt collector shall unreasonably oppress or abuse any person in connection with the collection of or attempt to collect any claim alleged to be due and owing by that person or another.

W. Va. Code § 46A-2-125.

The Complaint avers that Defendant "engage[d] in collection of [the] indebtedness through the use of telephone calls placed to Plaintiff, by written communications and did otherwise communicate with Plaintiff to collect the alleged debt." (ECF 1-1 ¶ 5.) The Complaint further asserts that "Defendant continued to cause telephone calls to be placed to . . . Plaintiff" after

15

"Plaintiff told . . . Defendant's employee that Plaintiff was represented by an attorney and gave Defendant's employee . . . Plaintiff's attorney's name and telephone number." (*Id.* ¶¶ 7–8.)

These factual allegations are sparse. Nonetheless, Defendant's purported conduct in continuing to contact Plaintiff after being notified that Plaintiff retained an attorney and receiving that attorney's contact information arguably constitutes unreasonably oppressive or abusive behavior. *See, e.g.*, *Snuffer*, 2015 WL 1275455, at *7 (denying a motion to dismiss a Section 46A-2-125 claim where the complaint alleged, in part, that the defendant "called him regarding his student debt after he had provided it with his attorney's contact information"). As such, for purposes of the present Rule 12(b)(6) motion, the Court finds that the Complaint states a plausible Section 46A-2-125 claim.

Accordingly, the Court **DENIES** the Motion to Dismiss as to the Section 46A-2-125 claim in Count I.

### 2. Section 46A-2-125(d)

Count I next alleges that Defendant violated the WVVCPA by "causing Plaintiff's phone to ring or engaging persons, including the Plaintiff, in telephone conversations repeatedly or continuously or at unusual times or at times known to be inconvenient, with the intent to annoy, abuse or oppress the Plaintiff in violation of *West Virginia Code* §46A-2-125(d)." (ECF 1-1 ¶ 12(b).) Section 46A-2-125(d) provides that the following specific acts are "unreasonably oppressive or abusive":

> Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously, or at unusual times or at times known to be inconvenient, with intent to annoy, abuse, oppress or threaten any person at the called number.

Under Section 46A-2-125(d), "calls can be unreasonably oppressive or abusive in three ways: (1) when the calls are made 'repeatedly or continuously;' (2) when the calls are made 'at unusual times;' or (3) when the calls are made 'at times known to be inconvenient.'" *Ferrell v. Santander Consumer USA, Inc.*, 859 F. Supp. 2d 812, 816 (S.D. W. Va. 2012) (quoting W. Va. Code § 46A-2-125(d)). "The requisite intent to annoy, abuse, oppress, or threaten can be established by the volume of telephone calls or the nature of the telephone conversations." *Bourne*, 998 F. Supp. 2d at 502 (citing *Ferrell*, 859 F. Supp. 2d at 816).

The Complaint includes no averments regarding the times when Defendant contacted Plaintiff or the frequency of these calls. (*See* ECF 1-1.) However, as noted above, the Complaint does allege that "Plaintiff told . . . Defendant's employee that Plaintiff was represented by an attorney and gave Defendant's employee . . . Plaintiff's attorney's name and telephone number," but "Defendant continued to cause telephone calls to be placed to . . . Plaintiff." (*Id.* ¶¶ 5–8.) For purposes of the present motion and drawing all inferences from the facts in Plaintiff's favor, the Court finds that these assertions state a plausible claim that Defendant repeatedly or continuously engaged Plaintiff in telephone conversations with the intent to annoy, abuse, or oppress Plaintiff. *See Wrenn v. Bank of Am. Home Loans, LP*, Civil Action No. 5:12–cv–01169, at *4 (S.D. W. Va. Jan. 30, 2013) (denying a motion to dismiss a Section 46A-2-125 claim that the defendant made "harassing calls at [the plaintiff's] place of employment with the intent to annoy and harass" the plaintiff where the complaint alleged that the plaintiff retained counsel and provided the defendant with the counsel's contact information, but the defendant nonetheless continued placing calls to the plaintiff).

Accordingly, the Court **DENIES** the Motion to Dismiss as to the Section 46A-2-125(d) claim in Count I.

3.   Section 46A-2-128(e)

Count I also includes a claim that Defendant "us[ed] unfair or unconscionable means to collect a debt from Plaintiff in violation of *West Virginia Code* §46A-2-128(e) by communication with Plaintiff after it appeared that the Plaintiff was represented by an attorney and the attorney's name and address were known or could be easily ascertained." (ECF 1-1 ¶ 12(c).) Section 46A-2-128 provides, in relevant part:

> No debt collector may use unfair or unconscionable means to collect or attempt to collect any claim. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:
>
> . . .
>
> (e)     Any communication with a consumer whenever it appears that the consumer is represented by an attorney and the attorney's name and address are known, or could be easily ascertained, unless the attorney fails to answer correspondence, return phone calls or discuss the obligation in question or unless the attorney consents to direct communication . . . .

W. Va. Code § 46A-2-128(e). For Section 46A-2-128(e) "liability to attach, there must be evidence that the debt collector was aware of some fact, statement, or act that would suggest to a reasonable person that the debtor is represented by an attorney." *Stover v. Fingerhut Direct Mktg., Inc.*, 709 F. Supp. 2d 473, 484 (S.D. W. Va. 2009); *see also Bourne*, 998 F. Supp. 2d at 504 (stating that the language of Section 46A-2-128(e) "indicates something more than strict liability" and that "[t]here exists a knowledge requirement, however minimal, before liability can attach"). Furthermore, "[e]ven if [the defendant knows] that the plaintiff was represented by counsel [in another matter], [the] defendant would [not] violate § 46A-2-128(e) by communicating with her if

18

it did not appear that she was represented by an attorney with respect to the debt at issue." *White v. Ally Fin. Inc.*, Civil Action No. 2:12–cv–00384, 2013 WL 1857266, at *4 (S.D. W. Va. May 2, 2013).

Section 46A-2-128(e) also requires that "the attorney's name and address are known, or could be easily ascertained." "If the name and address of the debtor's attorney are known, a debt collector could not argue in good faith that it did not 'appear' that the debtor was represented by counsel." *Stover*, 709 F. Supp. 2d at 484.

The Complaint alleges that Plaintiff retained "counsel to represent Plaintiff's interest in connection with consumer indebtedness," Plaintiff informed "Defendant's employee that Plaintiff was represented by an attorney and gave Defendant's employee the Plaintiff's attorney's name and telephone number," and "[t]hereafter, Defendant continued to cause telephone calls to be placed to the Plaintiff." (ECF 1-1 ¶¶ 6–8.) These allegations state a plausible Section 46A-2-128(e) claim. *See, e.g.*, *Stover*, 709 F. Supp. 2d at 484.

Accordingly, the Court **DENIES** the Motion to Dismiss as to the Section 46A-2-128(e) claim in Count I.

4.  Section 46A-2-127(a) and (c)

Finally, Count I includes a claim that Defendant "fail[ed] to clearly disclose the name of the business entity making a demand for money upon Plaintiff's indebtedness in violation of *West Virginia Code* §46A-2-127(a) and (c)." (ECF 1-1 ¶ 12(d).) Section 46A-2-127 states, in pertinent part:

> No debt collector shall use any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:

19

(a)     The use of any business, company or organization name while engaged in the collection of claims, other than the true name of the debt collector's business, company or organization;

. . .

(c)     The failure to clearly disclose the name and full business address of the person to whom the claim has been assigned for collection, or to whom the claim is owed, at the time of making any demand for money . . . .

W. Va. Code § 46A-2-127(a) & (c).

As Defendant correctly notes, the Complaint is completely devoid of any allegations that Defendant failed to disclose its identity to Plaintiff, or otherwise provided misleading information when contacting Plaintiff. (*See* ECF 1-1.) Absent such allegations, the Court "finds that [Plaintiff] fails to articulate facts, general or specific, explaining how Defendant could be liable under Section 46A-2-127." *Wrenn v. Bank of Am. Home Loans, LP*, Civil Action No. 5:12–cv–01169, at *3 (S.D. W. Va. Jan. 30, 2013).

As such, the Court **GRANTS** the Motion to Dismiss as to the Section 46A-2-127(a) and (c) claim in Count I.

## C.     Count II—Negligence

Count II is a negligence claim, which alleges that "Defendant negligently failed to train, supervise, monitor or otherwise control its employees to ensure that its employees did not violate the WVCCPA as alleged in Count I." (ECF 1-1 ¶ 15.) Defendant argues that Plaintiff's allegations related to this claim are deficient because Plaintiff failed to (1) "allege any duty [Defendant] owed him," (2) "provide any facts whatsoever showing how [Defendant] negligently trained, supervised, or monitored its employees through direct act or omission;" or (3) "show an independent finding of negligence on the part of a [Defendant] employee." (ECF 11 at 6.)

20

"To maintain a negligence action, a plaintiff must allege 'that the defendant has been guilty of some act or omission in violation of a duty owed to the plaintiff.'" *Elkins v. Diversified Collection Servs., Inc.*, Civil Action No. 5:13–cv–00927, 2013 WL 3754830, at \*5 (S.D. W. Va. July 15, 2013) (quoting *Aikens v. Debow*, 541 S.E.2d 576, 580 (W. Va. 2000)). "[A] plaintiff must [also] allege that the defendant's negligence was the proximate cause of the plaintiff's injury." *Id.* (citation omitted).

Under a negligent supervision theory, "[a] direct act or omission by a principal is required to hold it primarily liable." *Bourne v. Mapother & Mapother, P.S.C.*, 998 F. Supp. 2d 495, 506 (S.D. W. Va. 2014)). "The West Virginia Supreme Court of Appeals has indicated that a claim for negligent supervision requires an independent finding of negligence on the part of a supervised employee." *Id.* (citing *Taylor v. Cabell Huntington Hosp., Inc.*, 538 S.E.2d 719, 725 (W. Va. 2000)).

The Complaint fails to allege that Defendant owed Plaintiff a duty or to assert facts suggesting that Defendant did not train, supervise, monitor or otherwise control its employees. (*See* ECF 1-1.) These deficiencies are fatal to Plaintiff's negligence claim. *See Elkins*, 2013 WL 3754830, at \*5 (dismissing an identical negligence claim due to the same deficiencies); *Wrenn*, 2013 WL 369611, at \*4 (same).

As such, the Court **GRANTS** the Motion to Dismiss as to Count II.

**D.    Count III—IIED**

Count III is an IIED claim, which alleges that Defendant's conduct "was atrocious, intolerable and extreme so as to exceed the bounds of decency" and "[a]s a result of the Defendant's actions, the Plaintiff has suffered emotional distress." (ECF 1-1 ¶¶ 17–20.) Defendant

argues that the Complaint's "threadbare allegations" relating to the IIED claim "are insufficient as a matter of law." (ECF 11 at 5 (citation omitted).)

The Supreme Court of Appeals for West Virginia provided the following test for IIED:

> In order for a plaintiff to prevail on a claim for intentional or reckless infliction of emotional distress . . . . [i]t must be shown: (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 421 (W. Va. 1998). "[T]he role of the trial court is to first determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to constitute the intentional or reckless infliction of emotional distress." *Id.* "Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination." *Id.*

"The extreme and outrageous requirement is a notoriously high burden to meet." *Bourne*, 998 F. Supp. 2d at 507. "Conduct by a defendant which 'is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, overzealous, or negligent does not constitute outrageous conduct.'" *Bertolotti v. Prunty*, Civil Action No. 3:09–0952, 2010 WL 3743866, at *5 (S.D. W. Va. Sept. 21, 2010) (quoting *Hines v. Hills Dep't Stores, Inc.*, 193 W. Va. 91, 95 (1994)); *see also Bourne*, 998 F. Supp. 2d at 507 ("It is not enough that an actor act with tortious or even criminal intent."). Rather, in order for conduct to meet this outrageousness standard, "the conduct must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'"

22

*Harless v. First Nat'l Bank in Fairmont*, 169 W. Va. 673, 695 (1982) (quoting Restatement (Second) of Torts § 46, cmt. d). The Supreme Court of Appeals of West Virginia declined to further "define what will make a case of outrageous conduct," instead defining "what it is not on a case-by-case basis." *Hines*, 193 W. Va. at 96. As cases addressing this claim illustrate, IIED "is a difficult fact pattern to prove." *Id.* at 96; *see Garrett v. Viacom, Inc.*, No. Civ. A. 1:03CV22, 2003 WL 22740917, at *4 (N.D. W. Va. Aug. 27, 2003) ("[F]ew courts have found that a plaintiff has met the 'extreme and outrageous' standard under West Virginia law."). *Compare Bourne*, 998 F. Supp. 2d at 507 ("Twenty-seven unanswered phone calls over the course of eight months at regular hours of the day cannot be regarded as atrocious or utterly intolerable in a civilized community."), *and Tinsley v. OneWest Bank, FSB*, 4 F. Supp. 3d 805, 839 (S.D. W. Va. 2014) (finding that "no average member of the community would exclaim, 'Outrageous!'" at the defendant's alleged conduct in implying "that federal law required [the plaintiff] to . . . place excessively high flood insurance, despite the [p]laintiff having adequate flood insurance"), *with Elkins*, 2013 WL 3754830, at *6 (denying a motion to dismiss an IIED claim where the plaintiff alleged, in part, that the defendant "used the name and projected force of the United States government to collect a false debt" and the defendant's "agents refused to explain the basis or nature of the debt"), *and Miller v. SMS Schloemann-Siemag, Inc.*, 203 F. Supp. 2d 633, 638–40 (S.D. W. Va. 2002) (denying a motion to dismiss as to an IIED claim where the plaintiff alleged that "[i]n exchange for transporting her mortally injured husband back to the United States," the defendant "demanded" that she sign a written agreement acknowledging the defendant's assistance in transporting her husband and that the defendant did not admit any liability for the husband's injuries).

Count III provides the following conduct as examples of Defendant's purportedly outrageous conduct: (1) "Defendant placed telephone calls to Plaintiff after Defendant knew that Plaintiff was represented by an attorney in gross violation of the WVCCPA;" (2) "Defendant has adopted policies and procedures without regard to West Virginia law, which violate West Virginia law and are designed to, or have the effect of inflicting emotional distress upon consumers to coerce the consumer to pay money to . . . Defendant;" (3) "[i]nsofar as Defendant's violations of the WVCCPA are deemed to be 'willful,' pursuant to *West Virginia Code* §46A-5-103(4) such conduct is, as a matter of law, criminal conduct punishable by fine and/or imprisonment;" (4) "[i]nsofar as Defendant's conduct caused a phone to ring with the intent to harass, such conduct is criminal conduct pursuant to *West Virginia Code* §61-8-16(a)(3) punishable by fine and/or imprisonment;" (5) "[i]nsofar as Defendant's conduct of engaging in telephone conversation with Plaintiff undertaken with the intent to harass, such conduct is criminal conduct proscribed by *West Virginia Code* §61-8-16(a)(4) punishable by fine and/or imprisonment;" and (6) "[i]nsofar as Defendant's conduct constituted knowingly allowing a phone under Defendant's control to be used to harass any person, such conduct is criminal conduct proscribed by *West Virginia Code* § 61-8-16(b) punishable by fine and/or imprisonment." (ECF 1-1 ¶ 18.) Count III further alleges that, "[a]s a result of the Defendant's actions, the Plaintiff has been annoyed, inconvenienced, harassed, bothered, upset, angered, harangued and otherwise was caused indignation and distress." (*Id.* ¶ 20.)

The Court finds that Plaintiff fails to state a claim for IIED. Conduct that merely annoys or angers someone—as Plaintiff asserts here—does not rise to the level of outrageousness. *Bertolotti*, 2010 WL 3743866, at *5 (citation omitted); *see Hines*, 454 S.E.2d at 389 (stating that, in the

context of an IIED claim, "[t]he law intervenes only where the distress is so severe that no reasonable [person] could be expected to endure it" (quoting *Kanawha Valley Power Co. v. Justice*, 383 S.E.2d 313, 317 (W. Va. 1989))). *But see Snuffer v. Great Lakes Educ. Loan Servs., Inc.*, Civil Action No. 5:14–cv–25899, 2015 WL 1275455, at *8 (S.D. W. Va. Mar. 19, 2015) (finding that the plaintiff "state[d] an IIED cause of action" where he alleged that the defendant "called him repeatedly, continuously, and/or at unusual and inconvenient hours" and "the phone calls included threats or coercion," which resulted in the plaintiff being "annoyed, inconvenienced, harassed, bothered, upset, angered, harangued and otherwise . . . caused indignation and distress"). The "outrageous" standard is exacting and requires conduct that reasonably elicits reactions that go well beyond annoyance. *See, e.g.*, *Bourne v. Mapother & Mapother, P.S.C.*, 998 F. Supp. 2d 495, 507 (S.D. W. Va. 2014)). The Complaint does not allege such conduct or reactions and, as a result, fails to state a plausible IIED claim. *See, e.g.*, *Ferrell*, 859 F. Supp. 2d 812, 818–19 (S.D. W. Va. 2012) ("The mere fact that defendant attempted to collect plaintiffs' debt by [numerous] telephone calls . . . over a couple of months is, without more, quite insufficient to support an intentional infliction of emotional distress claim."); *see also Bourne*, 998 F. Supp. 2d at 507 ("It is not enough that an actor act with tortious or even criminal intent.").

As the Complaint fails to sufficiently allege that Defendant's conduct was outrageous, the IIED claim cannot survive the Motion to Dismiss. *See, e.g.*, *Travis*, 504 S.E.2d at 421. Accordingly, the Court **GRANTS** the Motion to Dismiss as to Count III.

### E.    Count IV—Invasion of Privacy

Count IV is an invasion of privacy claim, which alleges that "[t]he acts of . . . Defendant in placing telephone calls to Plaintiff's home telephone number invaded, damaged and harmed

Plaintiff's right of privacy." (ECF 1-1 ¶ 23.) Count IV further alleges that, due to Defendant's invasion of Plaintiff's right of privacy, "Plaintiff suffered emotional distress" and "has been annoyed, inconvenienced, harassed, bothered, upset, angered, harangued and otherwise was caused indignation and distress." (*Id.* ¶¶ 24–25.) The Motion to Dismiss does not directly address Count IV and, instead, generally asserts that all claims in the Complaint fail to meet minimum-pleading requirements. (ECF 11 at 5; ECF 14 at 1.)

"West Virginia recognizes the common law claim of invasion of privacy, and it includes the 'unreasonable intrusion upon the seclusion of another.'" *Bourne*, 998 F. Supp. 2d at 508 (quoting *Crump v. Beckley Newspapers, Inc.*, 320 S.E.2d 70, 83 (W. Va. 1984)). "Unreasonable intrusion upon another's seclusion occurs when 'one . . . intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, . . . if the intrusion would be highly offensive to a reasonable person.'" *Harbolt v. Steel of W. Va., Inc.*, 640 F. Supp. 2d 803, 817 (S.D. W. Va. 2009) (quoting Restatement (Second) of Torts § 652B).

Plaintiff provides only sparse and general allegations that Defendant invaded his privacy by placing annoying and harassing phone calls to his residential telephone number. (*See* ECF 1-1 ¶ 23–25.) "Plaintiffs have found it difficult in similar cases to produce evidence of an *intentional* intrusion on seclusion at the summary judgment stage." *Snuffer*, 2015 WL 1275455, at *8 (citing *Bourne*, 998 F. Supp. 2d at 508, and *Ferrell*, 859 F. Supp. 2d at 819). However, at the motion to dismiss stage, courts in this District found that "harassing phone calls can support an invasion of privacy claim based on intrusion on seclusion." *Id.* (citing Restatement (Second) of Torts § 652B, cmt. b(5)); *see, e.g.*, *Elkins v. Diversified Collection Servs., Inc.*, Civil Action No. 5:13–cv–00927, 2013 WL 3754830, at *7 (S.D. W. Va. July 15, 2013) ("Despite [the plaintiff's] failure of averring

26

the number and times of the telephone calls or communications in his pleading, he has alleged enough details in the pleading that any call on a satisfied debt 'invaded or intruded' upon the solitude of his private affairs."); *Wrenn v. Bank of Am. Home Loans, LP*, Civil Action No. 5:12–cv–01169, 2013 WL 369611, at *6 (S.D. W. Va. Jan. 30, 2013) (finding that the plaintiff stated a plausible invasion of privacy claim where the complaint included allegations that the defendant placed harassing debt-collection phone calls to the plaintiff). The Court similarly finds that, for purposes of the present motion, Plaintiff states a plausible invasion of privacy claim.

Accordingly, the Court **DENIES** the Motion to Dismiss as to Count IV.

### IV.  Conclusion

For the reasons discussed above, the Court **DENIES** the Motion to Remand, (ECF 5), and the Motion to Withdraw Stipulation, (ECF 28). The Court also **DENIES AS MOOT** the Request for Hearing on Motion to Remand. (ECF 19.)

The Court further **GRANTS** the Motion to Dismiss, (ECF 10), as to the West Virginia Code § 46A-2-127(a) and (c) claim in Count I, as well as Counts II and III. The Court **DENIES** the Motion to Dismiss as to the § 46A-2-125, § 46A-2-125(d), and § 46A-2-128(e) claims in Count I, as well as Count IV.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

ENTER:        June 4, 2015

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE